BENJAMIN H. PRIEST, EXECUTOR OF THE WILL OF JULIA COLE, DECEASED, PLAINTIFF-RESPONDENT, v. SAMUEL POLESHUCK, DEFENDANT-APPELLANT.

Argued May 10, 1954—Decided May 31, 1954.

558

*Mr. William Gelfond* argued the cause for appellant. *Mr. John S. Giava,* attorney.

*Mr. Benjamin H. Priest,* the respondent executor, argued the cause *pro se.*

The opinion of the court was delivered by

HEHER, J.   Plaintiff was given a verdict and judgment in this suit upon a book account for goods sold and delivered by the testatrix to defendant.   The appeal concerns the disallowance by the jury of credit for two payments claimed by defendant—*i. e.,* $500 on March 3, 1947, and $300 on November 8, 1949.   Error is assigned on the admission of what is termed "opinion testimony" related to the *factum probandum,* evidence that is also said to be "inconsistent or contrary" to the "facts pleaded" in the complaint; and the verdict is assailed as contrary to the weight of the evidence.

The Appellate Division affirmed the judgment.   Judge Ewart dissented, 29 *N. J. Super.* 401 (*App. Div.* 1954) ; and the cause is here on defendant's appeal as of right under *Article* VI, *section* V, *paragraph* 1(*b*) of the 1947 *Constitution.*

■ The testatrix's bookkeeper, Marjorie Jones, was sworn as a witness to verify the pleaded book account.   Defendant

thereupon introduced into evidence two receipts given to him by the testatrix, for $500 under date of March 3, 1947, and for $300 under date of November 8, 1949. He said these receipts evidenced cash payments in the stated sums made to the testatrix on their respective dates; and the omission of the payments from the account as of the dates of the receipts is made the basis of the claim of payment without due credit. Defendant testified: "I have none of the checks or records pertaining to the payments made in this account"; the plaintiff executor "was advised that he may get those records at the bank, that they have them, but I don't believe he did." It was testified, and there was no denial, that defendant's counsel had said all "cancelled checks" had been "destroyed."

The witness Jones then testified that it was the testatrix's custom, and hers as the keeper of the accounts, to enter a payment on the books as of the date of its deposit in the testatrix's bank account, and so the payment of $500 was not credited on the books until April 7, 1947, the date of its deposit in bank. The witness pointed, in corroboration, to the deletion by a stroke of the pen of the word "March," first written, and the insertion above of "Apr. 7." This proves, it is suggested, that the payment evidenced by the receipt and the credit thus entered on the books are one and the same. The witness said she "had started to put the payment in on the date that we received it, but held up until other payments came in, and it was not until April 7 that deposits were made in the bank." The book entry shows the payment was in cash. Such was competent evidence of practice, not opinion merely, tending to identify the payment by explaining the difference in dates that would otherwise sustain the inference of separate and distinct payments.

As to the $300 payment, the witness said of the receipt dated November 8, 1949: "It is the handwriting of Julia Cole (the testatrix), but in my opinion not the handwriting of Julia Cole on that date." She explained that on September 2, 1949 the testatrix had undergone an operation "for a breast cancer" which left her right arm, hand and fingers very swollen for some time thereafter, and during

the ensuing November; the testatrix could not drive her automobile "because of her arm"; she "could hold a pen or pencil, but she could not write in a normal fashion," and the receipt is in "her handwriting, definitely," her "normal handwriting," it would seem. The witness said that "on the basis" of her "knowledge of the books and the entries in the books," she "believed" that the entry on the books of a $300 payment on November 21, 1946 is evidenced by the receipt dated November 8, 1949, given at the time of the payment, for the handwriting on that receipt is "the way she wrote in 1946," and "1949 should have been 1946." She said that this entry was also "made a week or two weeks later in accordance with" the "practice of entering the date of deposit." The witness continued: "I think that when the check (sic) was written Miss Cole may have made a mistake in the date and written '49 rather than '46"; "I think that Miss Cole wrote 1949 in error, that she meant to write 1946 on that receipt"; "I think she gave it in 1946." She insisted that this payment of November 21, 1946 was in cash, and that the entry on the books of a payment by check "must have been an error." But the account has no credit as of that date, or near that date. As Judge Ewart has pointed out, there are but two credits during 1949: a payment of $1000 by check on January 10, and of $500 by check on December 21. There is this credit, for the cash payment, plaintiff insists, evidenced by the receipt erroneously dated November 8, 1949: "Nov. 21, 1946—Check—$300." The bookkeeper explained that there was "error" in "writing it as a check."

Knowledge is requisite to testimonial qualification. In assaying opinion evidence, for competency, the distinction is generally between the expert and the nonexpert—the witness who is skilled and specially experienced in the particular field, and the witness who has only the common knowledge and experience of mankind. From the latter, only facts perceived by the use of their senses, and not mere opinion, inferences, or conclusions based upon the facts supposedly within their knowledge, are adducible in evidence, for the

assessment of the facts involving common knowledge and experience is the exclusive province of the jury or other fact-finding authority. The witness in the latter category cannot offer his opinion of the probative worth of the facts. But he has more leeway where the facts are incapable of reproduction and comprehension by mere description. And testimony is of necessity ofttimes compounded of both fact and opinion. Compare *Laing v. United New Jersey R. R. & C. Co.*, 54 *N. J. L.* 576 (*E. & A.* 1892); *Packard v. Bergen Neck Ry. Co.*, 54 *N. J. L.* 553, 565 (*E. & A.* 1892); *Riley v. Camden and Trenton Ry. Co.*, 70 *N. J. L.* 289 (*E. & A.* 1904); *Walsh v. Board of Education*, 73 *N. J. L.* 643 (*E. & A.* 1906); *Prout v. Prout*, 82 *N. J. L.* 537 (*E. & A.* 1911); *In re McCraven*, 87 *N. J. Eq.* 28 (*Ch.* 1916); *Spinelli v. Golda*, 6 *N. J.* 68 (1950); *Ferry v. Settle*, 6 *N. J.* 254 (1950). *Vide Wigmore on Evidence* (*3d ed.*), *section* 478.

▇ The bookkeeper's "belief" of identity between the book entry of November 21, 1946, and the payment evidenced by the receipt dated November 8, 1949, proceeding as it does from her own evaluation of the circumstances, does not satisfy the basic requirement of testimonial knowledge. The belief is obviously a conclusion by supposition by a lay witness who has no greater skill than the jury in drawing inferences, and therefore inadmissible when the jury can be put into a position "of equal vantage for drawing them." *Wigmore, sections* 1918, 1924.

▇ Where the facts from which a witness received an impression are "to evanescent in their nature to be recollected, or are too complicated to be separated and distinctly narrated, his impressions from these facts become evidence." *Cornell v. Green*, 10 *Serg. & R., Pa.*, 14, 16 (1823). And evidence of opinion is proper, "on the same ground of necessity, in cases where language is not adapted to convey those circumstances on which the judgment must be formed." *Clark v. Baird*, 9 *N. Y.* 183, 185 (1853). So also where description is not adequate to "enable any one but the witness himself to see or comprehend them as they would have been seen or comprehended could the jury have occupied his

position of observation." *Evans v. People*, 12 *Mich.* 27, 35 (1858). In the final analysis the inquiry must of necessity be whether the jury needs the witness' inference, either because of his skill or because his "observed data" does not lend itself to adequate reproduction. *Wigmore, section* 1925.

It is "no satisfaction for a witness to say that he 'thinketh' or 'persuadeth himself,' and this for two reasons; first, because the judge is to give an absolute sentence, and for this ought to have a more sure ground than 'thinking'; secondly, the witness cannot be sued for perjury." *Adams v. Canon, Dyer*, 53b, Lord Coke in 1622. The testimony of the skilled witness was an ancient exception to the rule of testimonial worth, as in the nature of fact rather than bare opinion.

But in its very nature the admission of exceptionable opinion without objection cannot be deemed reversible error in the event of an adverse verdict. One cannot voluntarily submit to the introduction of such evidence as in aid of the fact-finding process, and then assert injury if the outcome be unfavorable. The primary office of an objection or a motion directed to the competency or relevance of evidence is the avoidance of error and the purging of the proofs of extraneous and harmful or prejudicial elements. Where, as here, a party has consented by inaction to the submission of the issue to the jury on evidence that is in substantial part opinionative merely, he is for quite obvious reasons precluded from any relief on that score if the result be adverse. Such was the rationale of the rule under the old practice that where testimony was given without objection, and there was no motion to strike or to direct the jury to disregard it, acquiescence in its introduction is to be presumed. *Fath v. Thompson*, 58 *N. J. L.* 180 (*E. & A.* 1895) ; *Prout v. Prout*, cited *supra*. And now, for the self-same reason, the "plain error" rule, *R. R.* 1:5–3(c), has no application in such circumstances.

And the point of "inconsistency" between the pleadings and the proofs, in relation to the payments in question, was not raised at the trial, and is therefore not a subject of cognizance here.

We have no occasion to consider whether the verdict was contrary to the weight of the evidence, for there was no application to the trial judge for a new trial on that ground as required by *Rule* 1:2-20, as then amended, now *R. R.* 1:5-3.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.